In the Matter of William Brice
JOHNSON, Jr. and Jeanette D.
Johnson, Bankrupts.

**TELMARK INCORPORATED, Plaintiff,**

v.

**Steven SCHWARTZ, as Trustee of William B. Johnson, Jr., and Jeanette D. Johnson, Defendant.**

Bankruptcy Nos. 79–26, 79–27.

United States Bankruptcy Court,
D. Delaware,
Wilmington.

Dec. 18, 1979.

Michael A. Meehan, Richards, Layton & Finger, Wilmington, Del., for plaintiff.

Steven Schwartz, Young & Schwartz, Dover, Del., for defendant.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

On September 11, 1979, Telmark Incorporated filed a complaint against Steven Schwartz as trustee of William B. Johnson, Jr. and Jeanette D. Johnson seeking reclamation of an Agway American steel building which was in the Johnsons' possession at the time of the filing of their voluntary petition in bankruptcy on February 12, 1979. Counsel for Telmark and the trustee subsequently stipulated that the building should be sold at public auction free and clear of liens and encumbrances and the claim of Telmark transferred to the net proceeds of sale. At sale, the building was sold for $6,200. The matter was tried November 13, 1979.

At trial there was introduced into evidence the following documents: sales agreement dated September 8, 1975; building construction agreement and lease each dated September 29, 1975; an assignment from Agway to Telmark; and a payment book.

The issue before the Court is whether the transaction involving the Agway building resulted in a true lease situation or a lease agreement intended as security.

If the lease were one intended as security, Section 9–102(2) of the Delaware Uniform Commercial Code provides that it falls within the scope of Article 9. Consequently, Telmark's failure to perfect that interest in accordance with the state law would result in a subordination of its rights to those of the trustee.

Section 1–201(37)(b) of Title 6 of the Delaware Code defines "security interest" and states in pertinent part: whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security; and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration, does make the lease one intended for security.

In *Peco, Inc. v. Hartbauer Tool and Die Co.*, 262 Or. 573, 500 P.2d 708, the Oregon Supreme Court succinctly analyzed Section 1–102(37), and I quote:

Upon a careful reading of the entire section, it is clear that the first question to be answered is that posed by clause (b)—whether the lessee may obtain the property for no additional consideration or for a nominal consideration. If so, the lease is intended for security. If not, it is then necessary to determine 'by the facts of each case' whether the lease is intended as security . . . .

The cases construing the above section have uniformly held that if the lessee, upon compliance with the lease, has the option to purchase the property for no additional consideration, or for a nominal consideration, the lease is a security interest as a matter of law.

In this respect, see also Judge Schwartz's Opinion dated December 21, 1978, in *Watkins Leasing Company v. Eduard F. von Wettberg*, trustee for Metal Cleaning and Processing, Inc., BK No. 77–49.

We do not have here a lease where the lessee may obtain the property for no consideration nor do we have an obviously nominal consideration. The lease, at Paragraph 4 states that at termination the lessee may purchase the item for an amount equivalent to its fair market value at termination. Clearly, this language was intended to remove any transaction under it from the operation of Article 9 of the Uniform Commercial Code.

But, the Court cannot look solely to the form of the lease. It must examine the facts of the case. The essential facts are undisputed.

At the initial contact on September 8, 1975, Agway's salesman, Mr. Wolgemuth, explained to Mr. Johnson that he could acquire this building in one of three ways:

1. purchase it for a straight-cash payment

2. finance it for a period of up to eight years

3. lease the building through Telmark's leasing plan

He emphasized the third option as providing the greatest tax benefit in that Johnson could deduct the entire payment over the period of the lease. A preliminary sales agreement was prepared at that time.

Following a credit check, there was a second meeting for the closing of the deal on September 29, 1975. Mr. Wolgemuth returned to the Johnson farm with Mr. Gerhart, a representative of Telmark, which is a subsidiary of Agway. At that time, a building construction agreement and the lease was prepared and signed. Mr. Johnson had been told by Mr. Wolgemuth that at the expiration of the lease term he would have three options:

1. extend the lease at its fair rental value

2. purchase the building outright at fair market value

3. advise Telmark he no longer had use for the building and it would be removed

He further explained that fair market value at termination was based upon approximately 15% of the original cost but that the figure was negotiable.

The original cost was $13,945. Fifteen per cent of that is $2,091.75. Payments for the full eight-year period of the lease would total $24,407.36.

Mr. Johnson testified that he believed he was building some equity, that he understood no difference between the financing and leasing options other than he would be required to make a final payment but that overall the amount would be about $26,000 and the final figure would be worked out.

At trial Mr. Gerhart testified that over the past four-year period, which corresponded with the time period in this matter, he could not remember a farm building ever having been repossessed at the conclusion of the lease term because Telmark and the customer had been unable to reach agreement on a sale price. He could not state the difference, in financial terms, between the leasing arrangement and the available arrangement for financing through Telmark. There are significant tax advantages.

In addition to the lease, there is a sales agreement, a building construction agreement, a loan payment coupon book, and Agway took a mortgage on the farm.

Mr. Gerhart further testified that the lease is intended to cover both equipment and buildings; however, in his experience it is used more often for equipment. When you apply the terms of the lease to this building, particularly the loss payable clause, save harmless clause, payment of taxes, etc., assumption of risk of loss, etc. and obligation to pay out the aggregate amount of unpaid rental upon a loss, these are indicia of sale when taken in conjunction with the other documents.

The question of whether the final payment is nominal, as argued by the trustee, is not crucial to the determination of this case.

I find that the lease was one intended as security. Plaintiff, not having complied with the terms of the Delaware Uniform Commercial Code, does not have a perfected security interest, and the trustee prevails.

An order entering judgment in favor of the defendant will be placed on the docket today.